IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DOUGLAS COUNTY CHAMBER OF COMMERCE, INC., : : : : | |
| Plaintiff, : : | CIVIL ACTION NO. 1:05-CV-1155-RWS |
| v. : : | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY and JOHN DOES 1-10, : : : : | |
| Defendants. : | |

## ORDER

This case is before the Court for consideration of Plaintiff's Motion to Compel [23]; Defendant's Motion to Stay Discovery [30]; Defendant's Motion for Judgment on the Pleadings [31]; Defendant's Motion for Protective Order [32]; Plaintiff's Motion to Amend Complaint Attachments [34]; Plaintiff's Motion for Summary Judgment [35]; Defendant's Motion for Summary Judgment [47]; and Plaintiff's Motion to Amend Motion for Summary Judgment [51]. After reviewing the entire record, the Court enters the following Order.

**Background**[1]

Douglas County Chamber of Commerce ("DCCC") was sued by a former employee, Angela Yarman ("Yarman") in the United States District Court for the Northern District of Georgia. Angela Yarman v. Douglas County Chamber of Commerce, et al., No. 1:02-CV-1209 (N.D. Ga. filed May 6, 2002) (the "Yarman suit"). At the time relevant to Yarman's claim, DCCC was covered by a Directors and Officers Protection Flexi Plus Insurance policy (the "Policy") issued by Philadelphia Indemnity Insurance Company ("Philadelphia"). Under the terms of the Policy, Philadelphia provided a defense for DCCC in the Yarman suit. Impact Solutions, LLC ("Impact") was also named as a party defendant in the Yarman suit. Impact provided human resources, payroll, and insurance administrative services and advice to DCCC. DCCC contends that at all times relevant to the Yarman claim, Impact was an agent of DCCC and was acting within the scope of that agency relationship. Philadelphia declined to provide a defense for Impact. The suit against DCCC and Impact was resolved in their favor by the granting of a motion for summary judgment.

---

[1] The Background is taken primarily from the Complaint and Exhibits attached thereto.

Impact provided human resources services to DCCC pursuant to a Client Services Agreement ("CSA") that included a provision requiring DCCC to indemnify Impact for all liability and expenses, including attorney fees, that Impact might incur from actions brought by any DCCC employees. Impact took DCCC to arbitration over its claim for reimbursement for defense costs. The arbitrator awarded Impact $140,206.41 on May 25, 2004. On November 3, 2004, DCCC settled Impact's claim for $145,000 and assigned DCCC's insurance coverage claims against Philadelphia to Impact.

On March 22, 2005, DCCC filed suit against Philadelphia in Douglas County Superior Court seeking to recover damages it contends arose from Philadelphia's refusal to provide a defense to Impact. On May 2, 2005, Philadelphia removed the case to this Court. On February 8, 2006, Philadelphia filed a Motion for Judgment on the Pleadings [31]. Among the grounds asserted by Philadelphia for judgment on the pleadings was the assignment by DCCC to Impact of DCCC's rights under the insurance contract. Thereafter, DCCC filed a Motion to Amend Complaint Attachments [34] so as to introduce an assignment from Impact back to DCCC of the claims against Philadelphia under the policy. DCCC and Philadelphia have each filed Motions for Summary Judgment [35 & 47].

**Defendant's Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings after the pleadings are closed. "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. [The court] must accept all facts in the complaint as true and view them in the light most favorable to the plaintiff[]." Moore v. Liberty National Life Ins. Co., 267 F.3d 1209, 1213 (11th Cir. 2001) (internal marks omitted), cert. denied, 535 U.S. 1018, 122 S. Ct. 1608, 152 L. Ed. 2d 622 (2002).

Rule 12(c) provides that if matters outside the pleadings are considered, the court may convert the motion for judgment on the pleadings to a motion for summary judgment. Pleadings include the complaint and answer. Fed. R. Civ. P. 7(a). Written instruments which are exhibits to a pleading are considered a part of the pleading. Fed. R. Civ. P. 10(c).[2] Philadelphia contends that it is

---

[2] Defendant attached DCCC's insurance application as an exhibit to its Motion for Judgment on the Pleadings and urged the Court to consider the application under the incorporation by reference doctrine. See Horsley v. Feldt, 304 F. 3d 1125, 1134 (11th Cir. 2002) (holding that incorporation by reference doctrine adopted for Rule 12(b)(6) cases is applicable to Rule 12(c) cases). The purpose for which Defendant wishes the Court to consider the exhibit is to establish that Impact was not a subsidiary of DCCC. In the Response to the Motion for Judgment on the Pleadings, DCCC admits that Impact was not a subsidiary. (Resp. Br. at 10). Therefore, the Court need not decide whether the exhibit should be considered. DCCC did not allege in the Complaint that Impact was

4

entitled to judgment in its favor because even under the facts alleged in the Complaint, Impact was not covered by the Policy.  "In Georgia, an insurer may fix the terms of its policy as it wishes, insuring against certain risks and excluding others, provided the terms are not contrary to law . . . .  Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms."  Western Pacific Mutual Ins. Co. v. Davies, 267 Ga. App. 675, 676, 601 S.E. 2d 363, 366 (2004).

The Policy provides that Philadelphia "will pay on behalf of the insured any loss and defense costs, resulting from any claim first made against the insured during this policy period. . .."  (Policy at Sect. IA).  Coverage is provided for a "claim that results from the wrongful act of the insured arising solely out of the operations of the organization [and] . . . occurs before or during this policy period."  (Policy at Sect. IB).  The Policy defines "insured" as "the organization and any individual insured."  (Policy at Sect. IIF).  An "individual insured" is:

> 1.  Any individual who has been, now is, or shall become a director, officer, trustee, employee (whether salaried or not), volunteer or committee member of the organization.

---

a subsidiary, and, in fact, admits that it was not.

5

AO 72A

  2.  The lawful spouse of a director or officer of the organization. Such spouse shall be an insured only for actual or alleged wrongful acts of the director or officer which they may be deemed liable as their spouse.

(Policy at Sect. E). The Policy defines the organization as, "(1) The parent organization, and (2) Any subsidiary of the organization." (Policy at Sect. H). The parent organization is identified as "the entity named in Item One of the Declarations." (Policy at Sect. I). DCCC is named as the parent organization in the Declarations. A "subsidiary" is "any non-profit entity, association or corporation of which the parent owns more than 50% of the voting stock, or in cases where no stock has been issued, controls such subsidiary at the time of policy inception, and shall be limited to any subsidiary identified as such in the application and any subsidiary created or acquired by the parent organization of which The Company is informed in writing." (Policy at Sect. K).

  Under the foregoing definitions, Impact does not qualify as an insured under the Policy. Impact is not the parent organization or a subsidiary, as those terms are defined in the Policy. Impact is not an individual, and thus, cannot be an individual insured.

  DCCC asserts that Impact is covered because it was acting as DCCC's agent. Assuming for purposes of this Motion that Impact was acting as

6

DCCC's agent, Impact would still not be covered by the Policy. The Policy states in clear and unambiguous terms who is included as an insured under the Policy. The Policy makes no provision for coverage of an agent who does not qualify as an individual insured or a subsidiary as those terms are defined in the Policy. Because Impact, acting as DCCC's agent, does not come within either of those classes as defined by the Policy, the Policy provides no coverage to Impact.

Finally, DCCC asserts that coverage is provided to Impact as a result of the provision of the Policy that "[t]erms of this Policy which are in conflict with the statutes of any state in which this Policy is issued are hereby amended to conform to such statutes." (Policy at Sect. XVI). DCCC contends that the Policy must be amended to comply with the following provision of Georgia law: "An agent who shall have discharged his duties shall be entitled to. . .all necessary expenses incurred about the business of his principal." O.C.G.A. § 10-6-31. The Policy is not in conflict with Georgia law. The statute and the cases cited by DCCC establish the obligation of a principal to an agent. Thus, the statute establishes DCCC's obligation to Impact if Impact was, in fact, acting as its agent. However, neither the statute nor the cases establish an obligation on the part of an insurer of the principal. The obligations of the

7

insurer are established by the contract between the insurer and the insured. Therefore, there is no conflict with Georgia law requiring amendment of the Policy.

## Conclusion

Based on the foregoing, Defendant's Motion for Judgment on the Pleadings [31] is hereby **GRANTED**.  Plaintiff's Motion to Compel [23]; Defendant's Motion to Stay Discovery [30]; Defendant's Motion for Protective Order [32]; Plaintiff's Motion to Amend Complaint Attachments [34]; Plaintiff's Motion for Summary Judgment [35]; Defendant's Motion for Summary Judgment [47]; and Plaintiff's Motion to Amend Motion for Summary Judgment [51] are **DENIED**, **as moot**.

SO ORDERED, this  8th  day of May, 2006.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE